IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SPECTRUM PRODUCE DISTRIBUTING, INC., | HONORABLE JEROME B. SIMANDLE |
| Plaintiff, | Civil No. 11-06368 (JBS/KMW) |
| v. | |
| FRESH MARKETING, INC., et al., | **OPINION** |
| Defendants. | |

APPEARANCES:

Minos H. Galanos, Esq.
MINTZER, SAROWITZ, ZERIS, LEDVA & MEYERS, LLP
2070 Springdale Road
Suite 400
Cherry Hill, NJ 08003
    Attorney for Plaintiff

**SIMANDLE**, Chief Judge:

## I.  INTRODUCTION

This matter comes before the Court on Plaintiff's motion for attorney's fees [Docket Item 28] pursuant to 7 U.S.C. § 499e(c)(2). Plaintiff's application seeks $66,548.95 in attorney's fees and costs.  Defendants, in default, file no opposition to this motion. For the reasons discussed herein, the Court will grant Plaintiff a reduced award of $31,773.95 in attorney's fees and costs.

## II.  BACKGROUND

Plaintiff filed the instant motion following the Court's award of

default judgment on Plaintiff's claims for violation of the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. §499.  The procedural history and underlying facts of this case are described in the Court's March 12, 2012 memorandum opinion, see Spectrum Produce Distrib., Inc. v. Fresh Marketing, Inc., Civil No. 11-6368 (D.N.J. Mar. 12, 2012), and are reviewed herein only to the extent necessary to serve as a context for the fee application under consideration.

### A. Procedural History

Between March 2011 and May 2011, Spectrum Produce ("Spectrum" or "Plaintiff") sold Fresh Marketing, Inc. nine truckloads of grapes for $325,426.50.[1]  Id., at *1.  Defendants failed to complete payment, leaving an outstanding balance of $304,298.50.  Id.  Plaintiff, a seller of perishable agricultural commodities who included the required statutory language in its invoices, is a beneficiary of the statutory trust created pursuant to PACA, 7 U.S.C. § 499(e)(c), until full payment is made for the produce.  On September 28, 2011, Plaintiff retained the law firm of Mintzer, Sarowitz, Zeris, Ledva & Meyers, LLP to assist in recovering the unpaid balances pursuant to the PACA trust.

---

[1] Fresh Marketing Farms, Inc. and Fresh Marketing Farms, LLC are both controlled and operated by Ralph Donato and Maria Donato.  (Mem. Law Supp. Pl.'s Appl. For Final Entry Default J.)  Due to their management roles, both parties are individually liable through their control of the PACA trust assets.  Spectrum Produce Distrib., Inc., Civil No. 11-6368. For the purposes of this opinion, Ralph Donato, Maria Donato, Fresh Marketing Farms, LLC, and Fresh Marketing Farms, Inc. will be referred to collectively as "Defendants".

On November 1, 2011, this Court issued a temporary restraining order against Defendants.  [Docket Item 4].  On November 15, 2011, this Court further entered a preliminary injunction against Defendants.  [Docket Item 14.]  Following the Clerk's entry of default, Plaintiff moved for, and this Court on March 12, 2012 granted in part, default judgment against all four defendants in the amount of $345,183.09.  Spectrum Produce Distrib., Inc., Civil No. 11-6368. Plaintiff's motion for default judgment as to attorney's fees and costs was denied by this Court "without prejudice to Plaintiff filing the necessary materials to support judgment as to those amounts consistent with L. Civ. R. 54.1 and 54.2 within fourteen (14) days of the entry of this order."  [Docket Item 27.]  Specifically, the Court noted that Plaintiff "has not demonstrated that the amount incurred, $59,214.80, was necessary to collect the balance due," and "offers no support for the figure, and on its face it would appear to represent more fees than were necessary to prevail in this unopposed case" in noncompliance with L. Civ. R. 54.2.  Spectrum Produce Distrib., Inc., Civil No. 11-6368 at *3 [Docket Item 26.]  The Court further noted the motion did not provide for shifting of Plaintiff's costs, and advised that Plaintiff must separately move for an award of costs pursuant to "the applicable law and L. Civ. R. 54.1."  Id. The instant application for attorney's fees and costs was subsequently

filed.[2]

### B. Attorney's Fees and Costs

Plaintiff's application for attorney's fees and costs requests compensation for services rendered of $64,872.50[3] and for costs amounting to $1,676.45.  (Certification of Counsel ¶¶ 17 & 18.) Breaking down the request for attorney's fees, attorney Minos H. Galanos, Esq. billed 183.5 hours; attorney Edward Jarosz, Esq. billed 1.2 hours; and law clerk Stephanie N. Luzzi billed 1.3 hours.  (Id. ¶¶ 11-13.)  The billing rates Plaintiff submits for this work are $350/hour for attorneys and $175/hour for law clerks. (Id. ¶ 15).

### III. DISCUSSION

### A. Award of Fees

Attorney's fees and expenses may be awarded to a prevailing party in a federal litigation where authorized by statute, court rule, or contract.  See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 257 (1975); Hall v. Cole, 412 U.S. 1, 4 (1973); Apple Corps. Ltd. v. International Collectors Soc., 25 F.Supp. 2d 480, 484 (D.N.J.

---

[2] Plaintiff's Counsel filed a Certification to support his application for attorney's fees, which the Court will consider to be a motion for attorney's fees.

[3] Plaintiff's Certification requests "Compensation for Services Rendered in the amount of $64,548.95 (See Exhibit 'A')." (Certification of Counsel ¶ 17.)  However, Exhibit A shows a "Subtotal for Fees" of $64,872.50 and a grand total of $66,548.95 including costs.  The Court therefore assumes that Counsel's request of $64,548.95 was a transcription mistake combining both figures, and that the "subtotal for fees" is meant to be $64,872.50.

1998).  Under PACA, a party can recover costs other than amounts due for produce "that are due contractually or otherwise 'in connection with' the transaction that is the subject of the PACA trust claim." Pacific Intern. Marketing, Inc. v. A & B Produce, Inc., 462 F.3d 279, 286 (3d Cir. 2006) (citing Middle Mountain Land & Produce, Inc. v. Sound Commodities, Inc., 307 F.3d 1220, 12203 (9th Cir. 2002)).  "Such related expenses include attorney fees and interest that buyers and sellers have bargained for in their contracts."  Country Best v. Christopher Ranch, LLC, 361 F.3d 629, 632 (11th Cir. 2004).

In this case, Plaintiff's invoices contained the following language: "In the event of our trust claim, we will seek to recover reasonable attorney's fees and the cost of recovery . . . . Interest and Attorney fees necessary to collect any balance due hereunder shall be considered sums owing in connection with the transaction under the 'PACA TRUST'." (Pls.' Mot. Prelim. Injunction Ex. A.)

Defendant's acceptance of these invoices, received with each shipment of grapes, gives good cause for finding that these terms formed part of the breached contract.  Spectrum Produce Distrib., Inc., Civil No. 11-6368 at *3.  As such the Plaintiff is entitled to all "attorney fees necessary to collect any balance due" under PACA.

### B. Prevailing Party

A party may only be awarded attorney's fees if it is the prevailing party in the action.  For Plaintiff to be the prevailing

party, it must "receive at least some relief on the merits of [its] claim before [it] can be said to prevail."  Texas State Teachers' Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 792 (1989).  Within the Third Circuit, for a party to prevail a court must determine (1) the plaintiff obtained relief on a significant claim in the litigation; and (2) there is a causal connection between the litigation and the relief obtained from the defendant.  See T.B. v. Mount Laurel Bd. of Educ., No.09-4780, 2012 WL 1079088 (Mar. 30, 2012)(citing Metro. Pittsburgh Crusade for Voters v. City of Pittsburgh, 964 F.2d 244, 250 (3d Cir. 1992)).

In the present case, Plaintiff clearly was the prevailing party.  This Court timely granted Plaintiff's motions for a temporary restraining order [Docket Item 3], a preliminary injunction [Docket Item 14], and default judgment [Docket Item 27].  The Court awarded Plaintiff the requested final judgment along with prejudgment interest on that amount.  Furthermore, given Defendants' previous nonpayment it is clear that there is a causal connection between the present litigation and the relief Plaintiff has obtained.  As such, the Court finds Plaintiff to be the prevailing party and proceeds to consider what would be a reasonable award of fees.

### C. Calculation of the Lodestar

The starting point for this Court's determination of a reasonable attorney's fee "necessary to collect any balance due" is calculation

of the lodestar amount.  Penn. Env't Def. Found. v. Canon-McMillan Sch. Dist. 152 F.3d 228, 231 (3d Cir. 1998).  The lodestar is the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); see also Lindy Bros. Builders, Inc. of Phila. v. American Radiator & Standard Sanitary Corp., 487 F.2d 161 (3d Cir. 1973).  The party seeking an award of fees has the burden to provide evidence supporting the hours worked and rates claimed.  Hensley, 461 U.S. at 434.

"To the extent the affidavit leaves any doubt as to the amount of fees to be awarded, these doubts shall be resolved against an award of fees.  This is because the party seeking to recover attorney's fees bears the burden of establishing its right to them."  Veneziano v. Long Island Pipe Fabrication & Supply Corp., 238 F.Supp. 2d 683, 695 (D.N.J. 2002).  "Once the attorney's fee applicant has produced satisfactory evidence, the burden shifts to 'the party opposing the fee to contest the reasonableness of the hourly rate requested or the reasonableness of the hours expended.'"  Marshak v. Treadwell, 2008 U.S. Dist. LEXIS 10567 (D.N.J. Feb. 13, 2008) (quoting Apple Corps. Ltd., 25 F.Supp. 2d at 485).

The court has discretion in deciding what attorney's fees are reasonable in a case, but cannot "decrease a fee award based on factors not raised at all by the adverse party" once the requesting party

sufficiently demonstrates the reasonableness of the requested fees.
Rode, 892 F.2d at 1183 (quoting Bell v. United Princeton Props., Inc.,
884 F.2d 713, 720 (3d Cir. 1989)).  Even in a default judgment case,
therefore, Plaintiff must establish the threshold reasonable lodestar
to the Court's satisfaction.

### 1. Hourly Rate

The first step in applying the lodestar formula is to determine
the appropriate hourly rate.  Cityside Archives, Ltd. v. New York City
Health and Hospital Corp., 37 F.Supp. 2d 652, 658 (D.N.J. 1999).  The
party seeking the rate, here the Plaintiff, bears the burden of
producing sufficient evidence of what constitutes a "reasonable
market rate for the essential character and complexity of the legal
services rendered." Evans v. Port Auth. Of N.Y. and N.J., 273 F.3d
346, 361 (3d Cir. 2001) (quoting Smith v. Philadelphia Housing Auth.,
107 F.3d 223, 225 (3d Cir. 1997)).  Whether a rate is reasonable
depends upon the "experience and skill of the attorneys" and the rates
for "similar services by lawyers of reasonably comparable skill,
experience, and reputation." Rode, 892 F.2d at 1183.  Once the
Plaintiff has made a prima facie showing of a reasonable hourly rate,
this Court is obligated to award attorney's fees at the requested
rate.  Evans, 273 F.3d at 361.

To show the reasonableness of a requested rate, counsel "must
produce satisfactory evidence—in addition to [their] own

affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."[4] Blum v. Stenson, 465 U.S. 886, 896 n. 11 (1984).  "Mere 'conclusory affidavits from counsel' are not enough to establish the reasonableness of a rate." Oper. Plasterers & Cement Masons Int'l Assoc. Local No. 8 v. Specialty Stucco Restoration, Civil No. 05-5879 (RMB) (D.N.J. Dec. 20, 2006) (quoting Furniture Medic, LP v. Faber, No. CIV.A.01-2762, 2001 WL 1528337, at *1 (E.D. Pa. Nov. 28, 2001)).

Here, the Court finds Plaintiff has failed to make a prima facie showing that the requested rate is a "reasonable" market rate.  The only discussion of hourly rates in Plaintiff's Certification of Counsel is the declaration that "[t]he attorney billing rate for this file was $350.00 per hour and the law clerk billing rate was $175.00 per hour." (Certification of Counsel ¶ 15.)  Within this District, affidavit language testifying that "[f]ees in this matter have been billed at rates customarily charged in similar matters to clients of affiant's firm" has been held conclusory and insufficient to establish the reasonableness of a fee request.  Oper. Plasterers & Cement Masons Int'l Assoc. Local No. 8 v. Specialty Stucco

---

[4] Ordinarily, attorneys seeking to demonstrate the reasonableness of their fees submit the affidavits of other similarly situated attorneys or third party fee structures to demonstrate the usual billing rate in the community.  See, e.g., D.I. v. Phillipsburg Bd. of Educ., 2011 U.S. Dist. LEXIS 53884 (D.N.J. May 19, 2011); Baughman v. U.S. Liability Ins. Co., 723 F.Supp. 2d 741, 748 (D.N.J. 2010).

Restoration, Civil No. 05-5879 (D.N.J. Dec. 20, 2006).  Plaintiff's
fee request does not even claim the billing rate requested is the
rate customarily charged, only that it is the rate that has been
billed.  As such, the Court finds the fee request to be conclusory
and insufficient to establish the rates requested are reasonable in
this market for comparable services.

Though Plaintiff failed to include this relevant fact in its
application for fees, the Court notes that both attorneys involved
in this matter are second year associates.[5]  Minos H. Galanos, the
lead attorney in this matter, admitted to "having to become competent
in the drafting of a temporary restraining order and preliminary
injunction," because he "had never prepared one before."
(Certification of Counsel ¶ 7.)  Nor was Mr. Galanos familiar with
PACA claims, which he admitted neither he "nor any other attorney
in this firm had experience with." (Id.)  Such inexperience renders
the requested rates highly suspect.

The Court is cognizant of the Community Legal Services ("CLS")
fee structure, which has been cited approvingly by the Third Circuit
Task Force on Court Awarded Attorney's fees and relied on by numerous

---

[5] Minos H. Galanos earned his Juris Doctorate in 2009 from Appalachian
School of Law.  Minos H. Galanos, Mintzer Sarowitz Zeris Ledva & Meyers
LLP, http://www.defensecounsel.com/galanos_minos.html (last
visited June 5, 2012).  Edward J. Jarosz earned his Juris Doctorate
in 2009 from the Temple University Beasley School of Law.  Edward J.
Jarosz, Mintzer Sarowitz Zeris Ledva & Meyers LLP,
http://www.defensecounsel.com/jarosz_edward.html (last visited
June 5, 2012).

District judges to resolve fee awards.  See Court Awarded Attorney Fees, 108 F.R.D. 237 (3d Cir. 1986); for instances of Court reliance on the CLS fee structure see, e.g., Maldonado v. Houstoun, 256 F.3d 181, 187 (3d Cir. 2001); Rainey v. Philadelphia Housing Auth., 832 F.Supp 127, 129 (E.D. Pa. 1993); Swaayze v. Philadelphia Housing Auth., No. 91-2982, 1992 WL 81598, at *2 (E.D. Pa. Apr. 16, 1992).

In the instant matter, the Court notes that CLS recommends hourly rates in 2011 of $180-225 for attorneys with 2-5 years of experience, and rates between $80-135 for Paralegals and Senior Paralegals. Attorney Fees, Community Legal Services of Philadelphia, June 23, 2011, http://www.clsphila.org/Content.aspx?id=206.  The Court further notes that CLS reserves hourly rates of $350 for those attorneys with over 20 years of experience. Id.

In light of the CLS recommended rates and the experience of Plaintiff's attorneys, the Court cannot consider Plaintiff's claimed hourly rate of $350 to be reasonable.  Plaintiff fails to provide any support for the claimed hourly rates beyond a conclusory statement of the "billing rate[s] for this file."

Were this Plaintiff's first application to the Court for fees, the Court might see fit to allow Plaintiff time to correct the insufficiency of support for the claimed hourly rate.  Plaintiff, however, already applied for fees once before and was denied for non-compliance with Local Civil Rule 54.2 and a resultant failure

to show the reasonableness of the requested attorneys fees. Plaintiff's counsel has had the chance to demonstrate the reasonableness of its fees, and has failed to sufficiently utilize the opportunity.

As such, the Court will reduce the hourly rates claimed by Plaintiff to those the Court considers to be reasonable, in light of the experience of the billing individuals and the work done. Relying on the CLS fee schedule, the Court therefore decides to allow counsel compensation for their work at the following hourly rates:

| Individual | Role | Billing Rate |
|---|---|---|
| Minos H. Galanos, Esq. | 2nd Year Associate | $200 |
| Edward Jarosz, Esq. | 2nd Year Associate | $200 |
| Stephanie N. Luzzi | Law Clerk | $100 |

Accordingly, the Court will use the rates of $200/hour for attorneys and $100/hour for clerks in determining the lodestar amount, which represent rates near the mid-range of hourly rates for this community having similar levels of experience.[6]

## 2. Time Reasonably Expended

---

[6] This reduction of the hourly rate for lodestar purposes is not meant as criticism of counsel's performance. Indeed, Mr. Galanos handled this case and his obligations to the Court well, and he achieved, in quick succession, a temporary restraining order, a preliminary injunction, and a default judgment for these book-account obligations. For these reasons, the Court is confident in assigning an hourly rate for these services near the market mid-point for second to fifth-year associates in area firms.

The second step in the lodestar calculation requires the court to determine how much time was reasonably expended on the matter. Public Interest Research Group of N.J., Inc. v. Winall, 51 F.3d 1179, 1188 (3d Cir. 1995). A plaintiff requesting attorney's fees must provide evidence supporting the time claimed to meet its burden of establishing the reasonableness of the hours worked. Marshak, 2008 U.S. Dist. LEXIS 10567 at *10. To the extent that the affidavit supporting the fee application leaves any doubt as to the amount of fees to be awarded, these doubts should be resolved against an award of fees. Veneziano, 238 F.Supp. 2d at 695.

The District Court is required to perform a "positive and affirmative function in the fee fixing process." Maldonado v. Houstoun, 256 F.3d 181, 184 (3d Cir. 2001). "Hours that would not generally be billed to one's own client are not properly billed to an adversary," and it is the role of the Court to review the hours billed and decide which are appropriately billed and which are "excessive, redundant, or otherwise unnecessary." Id. In determining whether the fee request is excessive, the Court inevitably will be required to apply its own judgments based upon its experience "with the case and its general experience as to how much time a case requires." Bell, 884 F.2d at 721 (3d Cir. 1989).

The matter before the Court consisted of a temporary restraining order, a preliminary injunction, and a default judgment, all of which

were unopposed.  Plaintiff requests compensation for 184.7 hours of attorney work-product and 1.3 hours of clerk work-product. (Certification of Counsel ¶¶ 11-13.)  These hours would yield a lodestar of $64,872.50 at the requested billing rates (or $37,070.00 at the adjusted billing rates the Court considers reasonable).  For the reasons explained below, the Court finds Plaintiff's billing unreasonable in part and reduces it to 133.6 hours of attorney work-product, 9 hours of clerk work-product, and 19.1 hours of investigator work-product, for a lodestar of $30,097.50.

### a. Billing for Unnecessary Tasks

This Court has previously held that attorneys cannot bill for work product that was not considered by the Court.  See T.B. v. Mount Laurel Bd. of Educ., No. 09-4780, 2012 WL 1079088 (D.N.J. Mar. 30, 2012).  Work on an unsuccessful claim cannot be compensated because it was not "expended in pursuit of the ultimate result achieved." Hensley v. Eckherhart, 461 U.S. 424 (1983) (quoting Davis v. County of Los Angeles, No. 73-63-WPG, 1974 WL 180 (C.D. Ca. June 5, 1974)). Under such a standard, work not utilized in Court cannot reasonably be compensated as a necessary cost of litigation.

Here, Plaintiff seeks 7.7 hours of reimbursement for preparations of cross-examination and rebuttal for the Preliminary Injunction hearing.

14

| Date | Hours | Description[7] |
|------|-------|-------------|
| 11/9/11 | 0.8 | Prepared cross-examination outline and ideas in meeting with EJJ.  Going over various ideas for witness testimony. |
| 11/9/11 | 1.2 | Assist MHG in developing strategy and outlining arguments for hearing on injunction, including strategy for cross examination and opening arguments. |
| 11/9/11 | 3.4 | Reviewed and analyzed relevant case law and statutory text distinguishing the Tanimura Opinion in preparation for rebuttal of any argument by defense counsel |
| 11/10/11 | 2.3 | Prepared questioning for defendant Ralph Donato |

Plaintiff was unopposed at the Preliminary Injunction hearing, as well as at every other stage of the case.  As such, Plaintiff never had the necessity to cross-examine, to question Ralph Donato, or to distinguish the Tanimura Opinion following defense counsel's opposition.  The outcome of these hours billed was unheard and therefore did not contribute to Plaintiff's success in this case.  Nonetheless, it was not unreasonable to undertake some preparation because it was uncertain whether any defendant would appear at the preliminary injunction hearing.  As such, the Court reduces these 7.7 billed hours to 4 hours, to account for the time Edward Jarosz and Minos Galanos collectively spent preparing for the Preliminary Injunction Hearing that did not relate to cross-examination.

### b. Billing Necessitated by Inexperience

---

[7] All descriptions of billed hours are taken, word for word, from counsel's billing records.  [Docket Item 28 Attachment A.]  Except for a few instances noted, these billing records contain ample detail of the tasks and services performed and the time expended.

Counsel bills 9.8 hours of time spent learning relevant laws and familiarizing himself with local procedures.  The Court finds this billing excessive and improper, and reduces it accordingly to 2 hours.  Lawyers are expected to provide competent representation,[8] and should "not charge clients for time necessitated by their own inexperience."  Model Rules of Prof'l Conduct R 1.5(a) annot. (2011) (Doing Remedial Work); see also N.J. Rules of Prof'l Conduct RPC 1.5 (2012) (adopting ABA Model Rule 1.5 with certain revisions).

> A client who engages counsel has a right to expect that the attorney will have sufficient general knowledge to competently represent her. While it may be appropriate to charge a client for case-specific research or familiarization with a unique issue involved in the case, general education or background research should not be charged to the client.

Att'y Grievance Comm'n of Md. v. Manger, 913 A.2d 1, 5 (Md. 2006)

Here, Plaintiff seeks to bill for the review of relevant procedural and statutory language involved in basic proceedings such as attaining a temporary restraining order, showing the necessity of a preliminary injunction, and determining what to do on violation of an injunctive order.

Plaintiff also seeks to bill time spent reviewing local rules and procedures in preparation for filing the complaint.  While adherence to local rules is essential, as a practicing attorney admitted to this Court it is Counsel's duty as such to know and follow

---

[8] See N.J. Rules of Prof'l Conduct RPC 1.1 cmt. (2012) (envisioning that attorneys maintain "necessary levels of competence.")

the local rules.  While the Court appreciates counsel's efforts to ensure compliance with the rules, it is nonetheless improper for counsel to bill his client for the time he required learning and ensuring compliance with the rules of this Court.[9]  The Court finds the following fees are not sufficiently complex or specialized as to justify billing to a client in light of the mandate of Model Rule 1.5.

| Date | Hours | Description |
|------|-------|-------------|
| 10/6/11 | 0.7 | Reviewed and analyzed the federal rules of civil procedure regarding Temporary Restraining Orders |
| 10/27/11 | 0.7 | Reviewed and analyzed the courts website for the proper forms needed for filing a complaint in USDC of NJ |
| 10/27/11 | 1.5 | Reviewed and analyzed all documentation prepared in accordance with the local rules in preparation for filing.  Revised information in order to show cause regarding time frame. |
| 10/31/11 | 0.8 | Reviewed and analyzed local rules for court documents to be filed with complaint |
| 11/7/11 | 2.8 | Reviewed and analyzed relevant case law and statutory text regarding burdens of proof for preliminary injunction, and what may defeat preliminary injunction in a PACA setting |
| 11/21/11 | 0.4 | Reviewed and analyzed the local rules regarding procedure for entering Default judgment |

---

[9] Plaintiff bills 1.5 hours for "review[ing] and analyz[ing] all documentation prepared in accordance with the local rules in preparation for filing.  Revised information in order to show cause regarding time frame." (Certification of Counsel Ex A.)  The Court assumes that 1 hour of that time was spent on revisions and not establishing compliance with local rules.

| 11/30/11 | 0.6 | Reviewed and analyzed the local rules regarding a filing of an affidavit of default with the court |
| 2/10/12 | 2.3 | Reviewed and analyzed federal rules and relevant case law regarding a violation of injunction Order |

Therefore, the Court reduces the aforementioned fees from 9.8 to 4 hours, preserving the time counsel spent studying preliminary injunctions in the PACA setting and the time spend revising the order, as well as some time for ascertaining compliance with the Court's procedural requirements.

### c. Overbilled Tasks

The Court also finds unreasonable Plaintiff's submission for fees for tasks that took an excessive amount of time to complete. The Court cannot consider hours reasonably expended when they are excessive, and the Court here finds multiple excessively billed tasks, totaling 31.1 billed hours.  The Court now reduces these hours to 18.4 hours.

Among the unreasonably billed tasks, perhaps the most noticeable involve the case's electronic docket.  Counsel bills 24 minutes searching the docket for the status of the matter, which should be a simple proposition.  The Court accordingly reduces the time for that task to 0.2 hours.  Counsel also bills for receipt of the "notice of e-filing for service" on each of six served parties, billing a total of 36 minutes to receive 6 automatically generated messages.  The

Court finds such separate billing of each task to be excessive, and reduces the billing total for receipt of the notices to 0.2 hours collectively.[10]

Counsel also excessively bills the time spent preparing for the preliminary injunction hearing.  In total, counsel bills 30.1 hours to tasks dedicated entirely or partially to the testimony and questioning of his client, Gary Blank.  Deducting time spent on other tasks, the Court estimates counsel bills roughly 22.7 hours preparing for witness testimony alone.[11]  This amount of time is excessive, especially when spent on one witness and at the preliminary injunction stage, and as such the Court reduces the requested hours for preparation for the preliminary injunction hearing from 30.1 hours to 18 hours to more accurately reflect reasonable preparation time

---

[10]

| Date | Hours | Description |
|------|-------|-------------|
| 11/01/11 | 0.4 | Docket search for status of matter |
| 11/09/11 | 0.1 | Notice of e-filing for service on Fresh Marketing Farms |
| 11/09/11 | 0.1 | Notice of e-filing for service on Fresh Marketing, Inc. |
| 11/09/11 | 0.1 | Notice of e-filing for service on Maria Donato |
| 11/09/11 | 0.1 | Notice of e-filing for service on Ralph Donato |
| 11/09/11 | 0.1 | Notice of e-filing for service on Newfield National Bank |
| 11/09/11 | 0.1 | Notice of e-filing for service on Susquehanna Bank |

[11] The Court reaches this demonstrative number by roughly dividing the billed time by the number of tasks being billed.

for such a hearing.[12]  This reflects the circumstances of a hearing, which was at all times uncontested, to prove a book account balance in a straight-forward series of transactions.

### d. Tasks that Should have been Performed by Specialized or Cost-effective Actors

The Court notes a number of tasks that should properly have been performed by lower billing and more specialized personnel.  Without a doubt, an attorney's willingness to take on secretarial tasks from time to and an attorney's diligent efforts to ensure their client receives owed funds are admirable.  However, time spent performing clerical functions should not be billed at an associate's hourly rate,

---

[12] Time billed to prepare for the preliminary injunction hearing.

| Date | Hours | Description |
|---|---|---|
| 11/07/11 | 1.1 | Prepared draft introductory questioning for Gary Blank |
| 11/08/11 | 1.6 | Prepared additional witness questions for Gary Blank |
| 11/09/11 | 5 | Reviewed and analyzed file materials and preparation for opening arguments and questioning for Plaintiff witness |
| 11/10/11 | 3.4 | Revised questioning for Gary Blank and reviewing and preparing additional questioning |
| 11/12/11 | 3.2 | Finalized and review questioning for Gary Blank |
| 11/14/11 | 8.5 | Preparing for injunction hearing by going over exhibits, opening, closing, and witness questioning |
| 11/14/11 | 0.4 | Telephone conference with Gary Blank going over questioning |
| 11/15/11 | 3.4 | Prepared for injunction hearing by finalizing opening, questioning, exhibit order and closing arguments |
| 11/15/11 | 3.5 | Meet with client in Order to prepare for hearing and questioning |

and time spent poring over financial records and background checks is wasteful when a specialized professional could perform the same tasks more efficiently.

The Third Circuit has held that it is unreasonable for an attorney to claim an attorney reimbursement rate for tasks that could be effectively performed by less expensive individuals.  Loughner v. University of Pittsburgh, 260 F.3d 173, 180 (3d Cir. 2001).  The Third Circuit explained:

> Nor do we approve the wasteful use of highly skilled and highly priced talent for matters easily delegable to non-professionals or less experienced associates. Routine tasks, if performed by senior partners in large firms, should not be billed at their usual rates. A Michelangelo should not charge Sistine Chapel rates for painting a farmer's barn.

Ursic v. Bethlehem Mines, 719 F.3d 670, 677 (3d Cir. 1983).  The Court, in reviewing fee applications, pays "particular attention to the level of professional ... billing time viz a viz the complexity of the task being performed."  In re Jefsaba, Inc., 172 B.R. 786, 798 (Bankr. E.D. Pa. 1994).  The nature, extent and complexity of the requisite task determines the level of professional or paraprofessional who should perform the task and therefore what billing rate is proper.  Id.

Here, the Court notes several instances of billed activities such as preparing exhibit binders and calculations of interest that should have been performed by a lower billing

individual (or billed at a lower rate).

| Date | Hours | Description |
|------|-------|-------------|
| 11/04/11 | 1.3 | Prepared trial binder of exhibits |
| 12/06/11 | 3.2 | Prepared a calculation of accrued interest for each set of invoices to defendants in accordance with requirement of accrual to be per thirty days of non-payment for purposes of default affidavit |
| 12/09/11 | 0.8 | Prepared chart table of all interest accrued for invoices outstanding for exhibit to Motion for default |
| 12/09/11 | 0.7 | Prepared all exhibits for Motion for default |
| 12/29/11 | 1.2 | Prepared additional calculations of interest of outstanding invoices prior to application to make default final |
| 1/06/12 | 1.4 | Prepared interest calculations for all outstanding invoices |

It is unreasonable for an attorney to calculate interest and prepare exhibit books at an associate's hourly rate. These tasks are more properly performed by a paralegal, or by an attorney at a paralegal rate. As such, it is proper for the Court to reduce the hourly rates billed for this work to the hourly rates a paralegal would have charged to complete the assigned tasks. Id., at 797; (quoting In re Vogue, 92 B.R. 717, 718 (Bankr. E.D. Mich. 1988) ("[w]hen an experienced attorney does clerk's work, he or she should be paid clerk's wages.")) Therefore, 8.6 of the requested hours billed to Minos Galanos, Esq. will be billed at the Law Clerk's billing rate of $100/hour that was set forth previously.

The Court further notes a number of billed activities could have been more efficiently and effectively performed by a specialized investigator, rather than an attorney.  These activities include asset searches, analysis of financial records, and review of individual histories.

| Date | Hours | Description |
|------|-------|-------------|
| 11/17/11 | 1.2 | Online investigation[13] into whatever assets or accounts, liens and judgments, defendants may have against them through various sources |
| 11/22/11 | 0.7 | Further investigation into possible side company Defendants are operating under |
| 11/22/11 | 1.1 | Reviewed and analyzed Victor Joseph Produce company as a potential cover for Defendants to violate court's order |
| 11/22/11 | 1.1 | Research into Felix Donato as defendant's son and president of another Produce company for way to get around preliminary injunction |
| 1/30/12 | 0.7 | Asset search of defendants in New Jersey, Pennsylvania and New York |
| 2/8/12 | 0.3 | Online search for listings of sale of any property affiliated with defendant |
| 2/10/12 | 1.7 | Reviewed and analyzed Maria Donato's banking statements and transactions |
| 2/14/12 | 4.7 | Reviewed and analyzed the banking statements for Fresh Marketing received via the subpoena to Newfield National Bank |
| 2/14/12 | 0.7 | Online investigation into Felix Donato as being a signer on the Newfield National |

---

[13] The Court notes counsel's use of "online investigation" as a descriptor of billed activity.  "Online investigation" can mean anything from a Google search or a check of Defendant's Facebook page to the use of a professional research database.  It is a phrase with all the specificity of "consulted a book."  For the Court to be able to understand (and therefore find reasonable) the sorts of activity being billed, Counsel is encouraged in the future to provide a more detailed account of what resources the "online investigation" utilized.

| | | Bank account for any information relating to his day to day activities with the companies |
|---|---|---|
| 2/15/12 | 2.1 | Prepared summary of the records from Susquehanna Bank |
| 2/15/12 | 1.4 | Prepared a summary of the banking statements, checks and records of Maria Donato |
| 2/15/12 | 0.4 | Reviewed and analyzed Felix Donato's background, work, and criminal history |
| 2/15/12 | 0.6 | Reviewed and analyzed the banking statements of Felix Donato for inspection to determine if he was utilizing trust assets for the Defendant's behalf |
| 2/23/12 | 2.4 | Reviewed and analyzed the banking statements of Maria Donato from Newfield Bank after Ralph Donato stopped running the account |

Just as paralegal work cannot be billed at an attorney's rates, the Court finds that non-legal investigative work cannot be billed at an attorney's rates. "When a lawyer spends time on tasks that are easily delegable to non-professional assistance, legal service rates are not applicable." Halderman by Halderman v. Pennhurst State Sch. & Hosp., 49 F.3d 939, 942 (3d Cir. 1995). Counsel had, to the extent of the Court's knowledge, no specialized training or skills to qualify him to act as an investigator. Thus, in addition to billing at a higher rate than a private investigator might, counsel would have required more time (and thus billed more hours) to complete the necessary tasks. Counsel's investigative activities should be billed at the rate a private investigator in the district might

have charged for searching assets and other business activities.
Though the courts of this district have formally established
no such rate, the Court considers $125 per hour to be at the
upper edge of a reasonable fee for such work.[14]  Therefore, the
Court will reimburse the 19.1 hours of investigate work Minos
Galanos, Esq. billed at the rate of $125 per hour.

### e. Summation of Lodestar

In light of the foregoing, the Court tabulates the lodestar to
be as follows.

| Billing Party | Attorney Hours ($200/hour) | Clerk Hours ($100/hour) | Private Investigator Hours ($125/hour) |
|---|---|---|---|
| Minos Galanos, Esquire | 133.1 | 8.6 | 19.1 |
| Edward Jarosz, Esquire | 0.5 | -- | -- |
| Stephanie N. Luzzi | -- | 1.3 | -- |
| TOTAL HOURS | 133.6 | 9.9 | 19.1 |
| TOTAL AWARD | $30,097.50 | | |

---

[14] This rate is established based on the fee structures of similarly
situated local private investigators, in light of the higher rates
charged for corporate and financial investigations.  See Coach Inc.
v. Fashion Paradise, LLC, No. 10-4888, 2012 WL 194092 (D.N.J. Jan.
20, 2012) (awarding $147.43 in investigators fees for an in-person
secret-shopper investigation); Fee Schedule, Glemser Confidential
Investigative Services, http://www.ispyforu.com/fees.php, (last
visited June 6, 2012) (charging $75.00/hour for general
investigations and $150.00/hour for special and corporate
investigations); Fee Outline, DeCola Detectives Inc.,
www.decolapi.com/Resources/Feeoutline.aspx, (last visited June 11,
2012) (charging between $200 and $2000 depending on the complexity
of the asset search).

In the Court's consideration, a lodestar of $30,097.50 is the maximum reasonable amount given the unopposed nature of this case, the lack of factual or legal complexity, the relative inexperience of counsel, and the reasonable hours billed.

### D. Adjustment of Fees

Applying the rules set out above to the attorney's fees and costs requested in this case, the Court has found that the lodestar amount totals $30,097.50.  Once the lodestar is calculated, the trial court is permitted to adjust it based on the degree of success the party seeking fees attained.  See Penn. Env't Def. Found. v. Canon-McMillan Sch. Dist., 152 F.3d 228, 232 (D.N.J. 1998).

Here, the Court has not been asked to modify the lodestar and cannot independently see any cause to do so.  Plaintiff prevailed in all its claims.  Though Plaintiff was unopposed at every stage of this case, counsel nonetheless had the duty to present legally and factually sound submissions to this Court, and to reasonably expect that opposition might arise at any stage of the matter.  Mr. Galanos performed fully competently and promptly obtained a fully favorable result for his client.  After the adjustments for a few unreasonably claimed services above, and after adjusting the hourly rates to the area norms for second year associates and paralegals, the Court has the impression that the resulting fee award is fair and reasonable to shift to the defaulting defendants.  As such, the Court will not

be adjusting the lodestar amount in favor of either party.

### E. Award of Costs

Plaintiff's Certification asked the Court for further award of $1,676.45 in legal costs expended in the delivery of service and documents, payment of filing fees, and acquisition of bank records. These costs were all rendered necessary by the nature of this litigation, specifically by the involvement of financial institutions holding the assets of Defendants.  The Court therefore finds these costs to be reasonable and awards Plaintiff's requested costs of $1,676.45.


### IV.   CONCLUSION

Therefore, for the reasons discussed above, the Court will grant Plaintiff's application for fees and costs in the reduced amount of $31,773.95  The accompanying order will be entered.


__  June 20, 2012  __                        __  s/  Jerome B. Simandle  __
Date                                         JEROME B. SIMANDLE
                                             Chief U.S. District Judge